Good morning. Our first case for the day is Lupian v. Joseph Cory Holdings, LLC, No. 17-2346. Good morning, Your Honors. Good morning. And may it please the Court. My name is Adam Smetstad on behalf of the appellant, Joseph Lupian Holdings. Before I begin, with permission, I would like to reserve three minutes for rebuttal. That will be granted. Thank you. Your Honors, the express purpose of the F-4A was to deregulate intrastate trucking. Leaving aside whether this was... F-4A, why didn't I think of that? I thought you were going to take five minutes and say F-A-A-A-A. Good for you. Leaving aside whether it was a good idea or a bad idea, Congress's intent in doing so was to leave to the market participants in the transportation industry decisions about what services to provide, how to provide them, and what to charge for them. As the Supreme Court noted in Roe, Congress believed that this freedom would result in greater variety of services and price, as well as quality of services offered. They also said something like if the increase is tenuous, remote, it doesn't trigger preemption. Quite correct, Your Honor. What they didn't say is the increase. What they said is if the connection width is tenuous or remote. In interpreting whether or not a particular claim is preempted, they found that any claim that has a connection width or reference to prices, routes, or services of a motor carrier, property broker, or freight forwarder are preempted. How do we do this without fact-finding? It's purely a question of law. You look to what the claim is being advanced. And Roe says that? The Supreme Court has never looked to the evidence in the claims being advanced. They've only looked to the allegations. So, for example, this is why it is a mistake that some courts have made to figure out what the quantum of the impact is. Maybe there's some room for disagreement there. It seems that the district court said there was no preemption based on its face. Don't you get a shot now if you want an as-applied challenge to preemption? I don't believe so, and I don't think that's what the Supreme Court teaches. And here's why. If, for example, it mattered whether if the preemption question turned on how much of an impact a particular claim had on a carrier's prices, routes, or services, then the determination of whether or not it was preempted or not would depend on the strength of the evidence of the first person to challenge the claim. In other words, if a small carrier came forward and was faced with a similar claim and demonstrated that the impact on its services was going to be put out of business, in essence, then the court might say, yes, it's preempted. But you didn't want – you moved for interlocutory appeal here. Yes. You felt you didn't need any further discovery, about like you didn't ask for any further discovery. Correct. So, well, let me answer this, to just pick up on what Judge Sirica said. If you were not to prevail on this appeal, assume that. Is it your position you can go back and engage in discovery and determine – and have a second bite at the apple? On the preemption issue? Yeah. The answer is no. So, in other words, you feel that whoever wins on this appeal wins the case, in effect? With respect to the preemption issue, yes. Okay. And you don't feel as if you need – well, I know you don't feel that you need the initial discovery, because you didn't ask for any in certifying this – the repeal. For the preemption question, that's correct. Ah. What question would you need discovery on? Well, the issue that has not yet been decided is whether or not the FLEs are, in fact, employees under the IWPCA. Okay. That's a separate from the preemption. Correct. Okay. Well, then, the only question for us is you're going to explain to us how – it depends on whether this claim relates to prices or routes. And in what way does a tenuous or remote or peripheral increase in services going to relate to prices, routes, or – I've got the third one. Services. Services, yeah. Well, Your Honor, and to be clear, what we're talking about is services. But what you need to do to determine whether or not the FLE's claim fits within the framework of the FRA preemption is determine whether or not their claim has a relationship to or reference – a connection with a relationship to the services of Joseph Corey. And when you look at the FLE's brief, and you can find this at pages 20 and 27, it is clear that they do. FLE's claim – Explain to me how it does. I'm sorry. Yes. FLE's claim that Joseph Corey required them to wear uniforms when they performed services, follow the routes that Joseph Corey assigned them when making deliveries, were not allowed to manage their own communications with customers, could not engage replacement drivers without Joseph Corey's approval, and did not operate their own independent businesses. It is the resolution of these allegations, these facts, each of which has a reference to and connection with Joseph Corey's services that will allow appellees to use Illinois' public policy as embodied in the IWPCA to recover deductions, each freely authorized in their contracts with the appellant. And if I may, I think this is where the 7th Circuit got it wrong with respect to BVACs. Do you see any difference in the facts between the 7th Circuit and what's before this court right now? Well, the facts know the legal theory, yes. I'm saying the factual predicate for this appeal is identical to what was before the 7th Circuit. Functionally so, yes. But isn't there a huge difference between the procedural posture of these two cases? I mean, in a summary judgment, you have a record. Oh, we have the allegations here. Right. Anyone has to decide as a matter of law based on allegations whether there's preemption? Yes, I do. And let me demonstrate why. The Supreme Court in Gettysburg, which involved a claim of the breach of duty in good faith and fair dealing, looked to the point of the claim, that is, whether it had a connection to or reference with the air carrier services. And it found that it did because it provided the claimant, Rabbi Ginsberg, with increased access to flights, upgrades, other benefits. That was all that was required. And by the time it reached the Supreme Court, it was only Rabbi Ginsberg's claim individually that was at issue. And the Supreme Court not once questioned the impact on Northwest services of allowing Rabbi Ginsberg back into the World Parks program. Well, what about the employee issue? I mean, they allege they're considered employees under the statute. You say no. We have no record to go on. It's irrelevant. The record is not of any moment. I'm not appealing the determination of whether or not they are employees or not. So are the appellate courts wrong to consider this on summary judgment? I'm sorry? The appellate cases that we're looking at, it seems to me all decided this issue on summary judgment. The issue of preemption, I think, is uniquely suited for summary judgment because it is purely a legal issue. You look to the claim advanced. It matters not that the law under which it is advanced does not single out motor carriers, brokers, or freight forwarders. It is only the effect of the claim being advanced. And here, and whether that claim has a connection with or reference to the services of the motor carrier, here it is abundantly apparent every single factual element of the appellee's claim relates to how they perform their services for the appellant. Well, let me say that. They have a contract here. How does the terms of this contract affect the route of terms of the only thing that's going to happen is that the employer here is going to have to pick up an additional few dollars that these contracts have required. How is that going to affect the price of terms of how the employer is going to operate? So I agree with you. I think this is a pure question of law before us, and it doesn't make any difference whether it's on summary judgment or judgment on the pleading. So the question is, how can this contract affect the terms or the routes that the employer is going to be involved in? It's not whether the contract affects the terms or the routes. The contract describes the free market outcome that was reached between the parties, and the Supreme Court enrollments in expressing what was important about deregulation and what was important about ensuring that the states not interfere in any way if it had a connection to prices, routes, or services was that, and I'm quoting here and I apologize, it says, The stability and efficiency of the market depend fundamentally on the enforcement of agreements freely made based on the needs perceived by the contracting parties at the time, and that's Warlands 513 U.S. at 230. Here, there's no question and there's no challenge but that these were freely made contracts. These folks operated under them for up to 14 years before bringing this claim. This is not a circumstance where someone was duped or induced into signing a contract, and certainly the F4A would not preempt any challenge to undoing a contract. That is an issue of state law and that is not a free market outcome. If somebody is fraudulently induced or otherwise forced to sign a contract, that is not a free market outcome, and the state law could find that no contract was made, but the remedy there is rescission, put everyone back to the circumstance in which they had before, and have a quasi-contractual claim. But here, instead of deciding this case right now, and we have it on interlocutory appeal, suppose that we were to decide that looking at the case as a whole, perhaps we should not have granted this interlocutory appeal. Perhaps it was improbably granted and it goes back to the district court. What would happen back at the district court? The case would proceed on the merits. But the issue would take discovery then, right? But it would have no impact on whether or not the claims are preempted. So the preemption question would be out of the case. Correct. And if I might make one final point because I see my time is running out. The error that the Seventh Circuit made in analyzing this issue can be found in 810F3-1055. And the error is they adopted a separate test for claims brought under state laws that were not directly aimed at motor carriers. And this is the quote. It says, quote, because the IWPCA is not specifically directed to motor carriers, the task before us is to determine whether the IWPCA will have a significant impact on the prices, routes, or services VVAC offers to its customers. The Supreme Court never engaged in such an analysis and never required such a showing in Ginsburg, which was also a law that was brought under a law not aimed at motor carriers. Thank you, Your Honors. Thank you, Counsel. May I please the Court? My name is Harold Licht and I have the pleasure of representing the plaintiffs in this case. To address a question raised by my brother in his argument, it is simply spurious to say that Congress was attempting to regulate the arrangements between companies and their employees when they enacted the F, I call it the F-Quad-A. That's how we refer to it. It is clear that Congress was attempting to prevent the re-regulation of the trucking industry with respect to the prices, routes, and services charged to customers. So it's just a spurious argument to say Congress was trying to regulate the employment relationships. It's inconceivable that in 1994 when the F-Quad-A was enacted, the Congress intended to wipe away all wage and hour protections for employees of trucking companies or with the deregulation act of the airline industry, the same thing. It's just not possible. And that's all the Seventh Circuit and the First Circuit and every other case, the Eleventh Circuit and AmeriJet is saying. The issue in this case, and there was very little discussion of this, is simply whether a provision of the Illinois Wage Payment Act that simply says that if you're going to deduct monies from someone's hard-earned wages or income, you can't do that unless it's voluntarily authorized at the time it is made. We argue that that was not done as it was not done in Costello. The Seventh Circuit simply held, and the First Circuit agrees with this in the MDA case and in the Schwann case, that because the statute at issue in Illinois has such a small effect on anything that the carrier would have to do with respect to its prices, routes, or services, it fit that exception in Roe that when it's tenuous and remote and it's not a significant burden on the deregulatory purpose of the statute, there's simply no preemption. Now, what's important to understand is we know that under the FAA and the teachings of Roe and all those Supreme Court cases, a statute or otherwise enforceable provision is preempted if it expressly relates to the prices, routes, or services that a carrier is going to provide to its customers. That's what deregulation is. And we know this statute, which is a wage statute that's been around in Illinois for many, many years, has nothing to do with that. Nevertheless, the Supreme Court held in Roe that you could still have preemption where a statute, although not intended to affect the prices, routes, or services, has such a significant impact on the prices, routes, and services that it still could be preempted. Like the Massachusetts statute. Yes. The Massachusetts statute is different than what we have enforced here. I'd like to read to you what the Seventh Circuit said in that case. Importantly, the Massachusetts statute at issue in NDA, that's the Massachusetts case, triggers far more employment laws than the employment definition contained in the IWPCA. The scope of the IWPCA is limited, and plaintiffs are only seeking to enforce the provisions prohibiting wage deduction. BVICS has not cited any authority showing that the IWPCA would trigger state employment laws to the extent of NDA. Now, when you go to what the First Circuit said in Schwann, which was after BVICS, Schwann made clear that deductions could have an impact on Corey's services. No, just the opposite. What Schwann says, and I'm reading now, I'm quoting from Schwann, if only one prong of the Massachusetts statute is not preempted, then plaintiffs shall be considered an employee for the purposes of Chapter 149 and 151. Now, they said, an employer must then provide certain benefits to employees, including various days off, parental leave, work break benefits, a minimum wage, and under plaintiffs' proposed application of Chapter 149, would require FedEx to pay for or reimburse for all out-of-pocket expenses incurred for the benefit of FedEx, such as the maintenance and depreciation for vehicles they use to perform. The IWPCA has no such provisions in it. The IWPA simply says that if you're going to deduct money from a person's check, you have to have them authorize it each time the deduction is made. Is there a difference between Schwann and what you have before you, or is there going to be some impact, is there not going to be? The Seventh Circuit found that it was so minimal that it was too tenuous or remote to trigger preemption because the effect only, because you could contract around it, that was very important in the Seventh Circuit's opinion, because as long as you authorize it at the time it's made, you could do it, and it only related to deducting money from people's checks, whereas in Schwann, the First Circuit, in describing the Massachusetts statute, said it would trigger a variety of impositions on the company, which would have a significant effect, including, and this is very important, they talk about that all the expenses, the gas, the truck, the mileage, would, in the Massachusetts case, have been affected by the application of the Massachusetts independent contractor statute. In the First Circuit's opinion in Schwann, which came after BVEX, Schwann specifically then referenced the BVEX decision from the Seventh Circuit and said, we look at that, and there it triggered very little impositions on the employer. So they specifically, in Schwann, said, we've looked at the Seventh Circuit and BVEX, we agree with the Seventh Circuit decision, BVEX, because the effect is only minimal on the employers, and conversely, BVEX looks at the First Circuit decision in Schwann and says, we've looked at that, and that has much more. How do we know whether it's minimal if we haven't had discovery? I want to get back to that. If we don't have discovery, how do we know, even though your opponent says we don't need discovery, because it's a question of law and there's a need for discovery, but how do we know that there is going to be an economic risk associated with this? Because maybe they don't want to pay all these things, and they're not going to be able to have independent contractors, they're going to have to change their business model to deliver things, not with an independent contractor, they've got to do it themselves. Well, you raised a very important question. When this case was first boiling up in the First Circuit, in the Mass Delivery Association case, which comes before BVEX, the plaintiffs in that case, including myself, the people resisting the NDA's case, not plaintiffs, the respondents, were arguing that there had to be an evidentiary showing, because how do we know that there would be a significant impact on prices, routes, and services? The First Circuit, for better or for worse, held, in its opinion, that we don't look at empirical evidence, we look at the logical effects. I never necessarily believed that that was correct, but that's what the First Circuit held, and that's where the logical effects comes in, so that the court held that you don't take empirical evidence, you look at the statute and its logical effects. Of course, the Solicitor General and Costello took an opposite view, right? It's hard to discern exactly what they're saying, but yes. But I want to make clear that the Seventh Circuit, in looking at the First Circuit's opinion, agreed with the logical effects test, and they said, yes, we can discern that the statute is so minimal in Illinois, because it only affects deductions taken out of people's pay, which can be contracted around, as long as you get their authorization at the time to do so, that we find the logical effects show it would only have a minimal, tenuous, and remote effect on a statute. My question is, how do you know what the effect is, unless you have any discovery? In other words, you objected to this being the interlocutory appeal. Correct. On a lot of different grounds. Well, you objected. Let's put it that way. What would be the effect if we were to rule in this case, for whatever reason that we find adequate, that this interlocutory appeal was improminently granted, and that we should not speak to this issue at this time until a case is concluded?  Every Court of Appeal that has addressed an FQA or ADA preemption issue based upon wage laws, the 11th Circuit in Ameriget, the 9th Circuit in Diltz, and the 9th Circuit in Mendonca, the 7th Circuit in Bevex, and now the 1st Circuit in MDA in Schwann, they have all agreed that you don't have an evidentiary shown. Some haven't said that directly, but the sum of all those cases is that you look at it on its face and decide whether or not there's a facial or logical effect. But didn't every one of those cases end up before the Court on a summary judgment? They did, but the facts were irrelevant to the Court's decision. For example, in Diltz it was a meal and rest break issue. They simply said that the meal and rest break issue was too remote. In Mendonca it was a prevailing wage issue. In Ameriget, Miami had passed this very high minimum wage statute. The 11th Circuit said it wasn't preempted. All those cases say that basic wage laws, basic labor protections, which preexisted the F-Quad A, were never meant to have the kind of significant improper burden on the prices, routes, and services of the capitalists. So why did you object to certification? We objected to certification because we thought the law was so settled, having been decided by the 7th Circuit on this very issue, that there was no reason for interlocutory appeal. Because one of the grounds for interlocutory appeal is that it's an unsettled area of law. We don't think it's unsettled. We think every circuit agrees with us. Your adversary has put all their eggs in the facial basket, and that's apparently what the District Court decided on, that on its face it's not preempted. What happens in this case if we agree with you? Do we need to send it back for further proceedings, or is that the end? No, no, this is just a beginning issue in the case. The case then goes back to decide, one, whether or not these workers were employees under Illinois law, whether the deductions were not properly authorized, whether there's any damages. So the whole case flows from there. This is just a preliminary issue. It doesn't resolve the case at all. I think your adversary agrees with you on that. I think we both agree on that. As a matter of interest, these other cases that you cited, were they decided on an interlocutory appeal, or were they decided after the case went to conclusion? I think all of those cases were decided at the conclusion. The NDA case in the 1st Circuit was just a declaratory judgment, so there was no real request for a trial. But I think all of the cases were decided after the conclusion of the case. I'm not aware of any other case being granted an interlocutory appeal. I could be wrong on that. That's my understanding. I think you're right. I wanted to make two final arguments, if I could. In their brief and in their argument today, they make an argument that they think the 7th Circuit and the 1st Circuit used a different test, or at least they say the judge in certifying this case, that there was a different test used, a relational test by the 7th Circuit, and a logical effects test by the 1st Circuit. As we point out in our brief, and I think it's clear, there is no difference in the standards that both circuits applied. They both used the logical effects test to look at the quantum of proof, and they both looked at the relation between the statute at issue and what effect it would have on the prices, routes, and services of the carrier to determine whether or not there was preemption. So there is no split in the circuits. As I mentioned before, the 1st Circuit and the 7th Circuit both commented favorably on each person's case. The final thing I wanted to say, that relying on Ginsburg, the defendant makes this argument that here there's an attempt to get more than the benefit of the bargain, and therefore you can't do that under Ginsburg. But the problem is, and this is very important, in Ginsburg, like these other cases, Morales and Rowe, there the statute at issue, or the cause of action at issue, was specifically intended to change the service or route or price that the airline or the trucking company was imposing on customers. It's the relationship between the company and the customers that Congress was intending to regulate. Congress never was intending to regulate the employment relationships. So the plaintiffs here aren't trying to get a greater benefit of the bargain. They're simply saying that under Illinois law, for the simple purpose of the Illinois wage payment statute, not other Illinois wage employment statutes, they were employees, and under that they simply cannot have money taken out of their checks willy-nilly without authorizing it. And that makes a lot of sense when you think about it, because these workers, remember these workers are showing up at a warehouse, they're delivering furniture day in, day out. You've probably all had a Sears or something delivered to your house, and they show up in their truck and they work six or seven days a week. And at the end of a week, a pay week, the employer, if the Illinois wage payment act did not apply, could simply say, okay, we're deducting $300 because the customer said there was a scratch, and we're blaming you for the scratch. So instead of getting your $500 paycheck, you get $200. States have the right to have these basic wage protections built into the law to protect workers, and Congress never meant to determine otherwise. Thank you very much. Thank you, counsel. Counsel, if I could just ask you to start with, I'm going to throw at you kind of some old maxims that we apply generally. I think they're generally accepted throughout the country. Preemption is an affirmative defense, right? It is. Yes. And that's the defendant's burden to prove. And in this procedural, under Rule 12b-6 procedural sort of setting here, doesn't the defense have to be apparent on the face of the complaint? And if so, is it? It is, and it's demonstrated because the allegations that the appellees make all have a connection with. They center around, as my brother just said, they center around what they did every day, where they showed up to the warehouse, getting in the trucks, delivering the appliances. These are all issues related to the services of the motor carrier. And, indeed, it's very similar to ERISA. ERISA, people remove all the time, move to dismiss immediately. It's based on the allegations in the complaint. It does not require a further showing. I do want to address a couple of things. Well, all that's going to happen is they're going to be required to pay these people whatever the wages are, the wage deductions. But how does that affect the route or the services that are going to be paid? In other words, aren't we dealing with just a money transfer here one way or the other? Your Honor, the Supreme Court has never looked at the quantity of impact on a plaintiff's claims to determine whether or not they were preempted. And MnDONCA, which is a Ninth Circuit case, really demonstrates the problem with trying to do that. And MnDONCA, the tow truck company, said that increasing its wages by the prevailing wage statute, and, by the way, this was already an employment model, required it to raise its prices 25 percent. And the Ninth Circuit said that's not enough. Well, does that mean that if somebody came and said 50 percent, it would be? And the whole point of 51 percent, how much is enough? And the point of the F4A is the F4A does not allow states to interfere with the prices, routes, or services of motor carrier at all. And when the claim itself has been… But they don't. Even increasing the cost 25 percent is not going to affect wages or services or routes. That's certainly what MnDONCA… We're not dealing with 25 percent, I'm sure, in this case. But my problem is, requiring the employer to make certain deductions or consent to them, how does that at all affect what routes, services, or contracts are going to engage in? The plaintiff's claims, by surrounding the issue of how they perform their services, by challenging the manner in which they perform their services, they made it about the services. One point I want to make out, Ginsburg says that a state law will only escape preemption if you can contract around it. Complying with a statute by obtaining consent is not the same as contracting around a statute. Thank you, Your Honors. Thank you, Counsel. We thank Counsel for their excellent arguments and briefing. We'll take the case under advisement.